## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JARED W.,[1]                                              Case No. 2:22-cv-01786

        Plaintiff,                                   Watson, J.
                                                          Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Jared W. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents several claims of error for this Court's review. The undersigned concludes that the Commissioner's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record.

### I. Summary of Administrative Record

Plaintiff filed new applications for a Period of Disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in October 2018, alleging disability based on autism spectrum disorder, depression, anxiety and back pain.[2] (Tr. 35). Plaintiff was 21 years old at the time of his alleged onset of disability. He graduated from high school and lives with his aunt in her home. (Tr. 66-67). He previously worked

---

[1]Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The record reflects the filing of prior electronic applications on Plaintiff's behalf during a period of time when Plaintiff was still a minor child. (Tr. 88).

at Burger King, for Yankee Candle as a stock clerk, at Walmart as a grocery stocker, and for other companies, including Amazon, as a warehouse packer.  (Tr. 61-65)

Plaintiff's initial claim was denied and he timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 18, 2020, Plaintiff appeared by telephone with counsel and gave testimony before ALJ Deborah F. Sanders; a vocational expert ("VE") also testified.  (Tr. 53-86).  On December 29, 2020, the ALJ issued an adverse written decision. (Tr. 35-47).  The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Through counsel, Plaintiff then filed this judicial appeal.

The ALJ determined that Plaintiff has the following severe impairments: autism spectrum disorder, depression, anxiety, and lumbar degenerative disc disease status post lumbar laminectomy. (Tr. 38).  Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

The ALJ next determined that Plaintiff's RFC would allow him to perform medium work subject to the following limitations:

> [T]he claimant can perform 1-3 step simple, routine, repetitive tasks in a relatively static work environment that does not require a production rate pace, and no strict production quotas; with occasional interaction with coworkers but no tandem or shared tasks; and occasional interaction with the public but not in a customer service capacity.

(Tr. 40).

Based upon the RFC and testimony from the VE, the ALJ determined that Plaintiff could perform his prior work as a warehouse packer.  In addition, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of cleaner/sweeper, machine feeder, and

laundry worker. (Tr. 46). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In his Statement of Errors, Plaintiff seeks reversal on grounds that the ALJ committed two errors: (1) by failing to include a mental RFC limitation to "superficial contact" in the hypothetical posed to the VE; and (2) by failing to give greater weight to the opinions of his treating nurse practitioner.  On August 9, 2022, Plaintiff filed an additional "Motion to Remand" in support of his Statement of Errors.  For the reasons that follow, the Commissioner's decision should be affirmed and Plaintiff's motion for remand should be denied.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's

denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B.  Plaintiff's Limited Challenge to his Mental RFC

Plaintiff limits his challenge to the ALJ's assessment of his mental limitations. Plaintiff's first assertion of error criticizes the ALJ's decision to adopt most but not all of the RFC opinions of two non-examining agency psychologists. On March 9, 2019, David Dietz, Ph.D., offered the following narrative explanation of Plaintiff's mental RFC based upon his initial consideration of the record:

> The clmt retains sufficient mental capacity to concentrate on, understand, and remember unchanging, simple instructions, but would be limited for detailed or complex instructions.  The clmt's ability to deal with coworkers and the public would be somewhat reduced, but adequate to handle brief and superficial contact.  Similarly, his/her ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting.

(Tr. 97).  At the reconsideration level, Lisa Foulk PsyD, reiterated Dr. Dietz's assessment. (Tr. 125).

The ALJ found the identical opinions to be only "partially persuasive."  (Tr. 44). While adopting many of the restrictions, the ALJ specifically rejected the limitation to "brief and superficial contact" with coworkers and the public. (Tr. 97, 110).  Instead, the ALJ determined that Plaintiff could engage in "occasional interaction with coworkers but no tandem or shared tasks; and occasional interaction with the public but not in a customer service capacity."  (Tr. 40).  Plaintiff now argues that the ALJ''s articulated reasons for finding that Plaintiff is capable of "occasional" and not merely "superficial" interactions are insufficient to provide a "logical path of reasoning" to support the non-disability decision. (Doc. 9 at 12, PageID 641).  The undersigned disagrees.

An ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). Here, the ALJ carefully explained her reasons for adopting some but not all of the non-examining psychologists' opinions.

> While the undersigned concurs the claimant has limitations in concentration and persistence, their opinions are not provided in vocationally relevant terms, including "more flexible" production standards and schedules. However, the undersigned accommodated this in limiting the claimant to repetitive tasks in a relatively static work environment that does not require a production rate pace, and no strict production quotas. This is consistent with the claimant's records, noting fair concentration, and cooperative behavior. [A]dditionally, their opinions as to the claimant's limitations in social functioning are inconsistent noting no social interaction limitations, but finding the claimant would have a "somewhat reduced" ability to deal with coworkers and the public but could handle brief and superficial contact, and could handle ordinary levels of supervision. Again, these terms are not vocationally relevant. The undersigned finds the claimant had tolerate[d] occasional interaction with coworkers but no tandem or shared tasks; and occasional interaction with the public but not in a customer service capacity. This is consistent with the claimant's history of autism spectrum disorder, but ability to live with other family members, work at a fast food chain, and his general cooperative behavior and interaction on mental status examinations.

(Tr. 44).

In support of his assertion of error, Plaintiff begins by challenging the ALJ's suggestion that the phrase "brief and superficial contact" is not "vocationally relevant." Plaintiff argues that reversal is required because the phrase is easily understood. *See e.g., Hummel v. Com'r of Soc. Sec.*, 2020 WL 13572215, at *4 (S.D. Ohio March 13, 2020) (holding ALJ's rejection of "superficial" contact as not "vocationally relevant" was "inadequate."). The undersigned recognizes that many courts have reasoned that the adjective "superficial" is commonly understood to refer to the quality of social interactions, whereas the term "occasional" refers to the quantity of social interactions. *Id.* Thus,

6

"courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions - including a limitation to 'superficial' interaction." *Hutton v. Com'r of Soc. Sec.*, 2020 WL 3866855, at *4 (S.D. Ohio July 9, 2020) (collecting cases).

However, all of the case law on this issue is unpublished. No published and controlling case law, social security regulation, or social securing ruling defines "superficial contact" in vocationally precise terms. Given that lack of regulatory authority, several courts have explained why a phrase that this Court might believe to be easily understood by a lay person (i.e. "superficial contact") still might be described as not "vocationally relevant" by an ALJ who is required to formulate a hypothetical in more precise terms.

> [A] VE's testimony must be based on her own vocational expertise and/or the information in the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations ("SCO"), and <u>cannot</u> be based on conclusions outside of her expertise, assumptions that are not clearly described on the record, or assumptions or definitions that are inconsistent with the SSA's policies or definitions. For these reasons, it may fall to the ALJ to "convert[ ] and incorporate[ ]" the limitations set forth in a medical opinion "into vocationally relevant terms" – i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own vocational experience – before including those limitations in a hypothetical posed to a VE.

*Stoodt v. Com'r of Soc, Sec.*, 2022 WL 721455, at *16 (N.D. Ohio, Jan. 13, 2022) (internal citation omitted), adopted 2022 WL 716105 (March 10, 2022). Again, there is no specific definition for the term "superficial" human interaction in the DOT or SCO. *Id*.; s*ee also Beulah v. Com'r of Soc. Sec.*, 2022 WL 1609236, at *31 (N.D. Ohio March 25, 2022) (holding that the term "superficial" does not have a defined meaning for purposes of vocational testimony).

By contrast, specific regulatory definitions state that the ALJ's use of the word "occasional" in her hypothetical means an activity or condition existing up to 1/3 of the

time.  *Stoodt,* 2022 WL 721455, at *16,   Still other vocational definitions define various

types of social interactions in the workplace.

> Other defined terms in the DOT and SCO that relate to interactions include
> mentoring, negotiating, instructing, supervising, diverting, persuading,
> speaking-signaling, serving, and taking instructions-helping. SCODICOT
> Appendix E; *see also Reese v. Saul,* No. 3:18-CV-442-HBG, 2020 WL
> 1312703, at *14 (E.D. Tenn. Mar. 19, 2020) (explaining that "the 'DOT ranks
> the degree of interaction with people in each job type' on a scale from 0
> (Mentoring) to 8 (Taking Instructions-Helping), going from the highest to the
> lowest level of functioning") (quoting *Kane v. Saul*, No. 3:18-CV-746 (HEH),
> 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019), *report and
> recommendation adopted by*, 2020 WL 130134 (E.D. Va. Jan. 10, 2020).)

*Id.*

Perhaps more importantly, in this case the ALJ did not reject the limitation to

"superficial" interaction merely because it was not sufficiently defined in vocational terms.

Rather, the ALJ specifically rejected the limitation to "superficial" interactions and

determined that Plaintiff could engage in "occasional" interactions.  Plaintiff's second line

of attack suggests that the ALJ misunderstood the meaning of "superficial" and/or

provided too little analysis for this Court to follow her reasoning for finding the Plaintiff

could engage in "occasional" social interactions with some additional limitations.

While the ALJ's analysis is brief, it is legally sufficient.  Therefore, the undersigned

finds no reversible error.  For example, the ALJ reasonably concluded that the limitation

to "superficial" interactions in the consultants' opinions was inconsistent with the same

consultants' other RFC opinions.  (Tr. 44).  As Plaintiff himself argues, a limitation to no

more than "superficial" social interaction suggests a significant level of limitation.

However, both consultants simultaneously and unequivocally opined on the same mental

RFC form that Plaintiff has "**no**" social interaction limitations at all.  (Tr. 97, 110, 125 137)

(emphasis added).   Adding to the internal inconsistency of the consulting opinions,

another part of their narrative report states that Plaintiff's abilities to interact with

coworkers and the public are no more than "somewhat reduced," and that he could "handle ordinary levels of supervision in the customary work setting."  (Tr. 97, 125).  The ALJ was therefore faced with three inconsistent RFC opinions from the same consultants: (1) Plaintiff has "no" social interaction limitations at all; (2) Plaintiff has "some" limitation but can still handle "ordinary levels of supervision," or (3) Plaintiff is extremely limited to "superficial" interactions.  The ALJ's decision to reject the two most extreme opinions (either no limitation or limitation to superficial interactions) in favor of "occasional" social interactions is substantially supported.

In her review of the record as a whole, the ALJ noted that school records reflect "some social interaction deficits" consistent with Plaintiff's reportedly high functioning autism spectrum disorder, (Tr. 39), and that Plaintiff had been enrolled in special education classes prior to graduating.  The ALJ reasoned that "[e]ducational records noted the claimant had fewer social skills with respect to communication, cooperation, assertion, empathy, engagement and responsibility."  (Tr. 41).  In other words, a review of the record suggested a basis for some level of social interaction limitation.  However, in assessing what level of limitation was appropriate, the ALJ noted that Plaintiff "did not report significant difficulties with his work" including prior full-time work as a dishwasher and at Burger King.  (Tr. 40, 43).  In addition, despite occasional findings of a depressed mood and flat affect, Plaintiff was consistently "noted to be cooperative."  (Tr. 39; *see also* Tr. 41, 42, 43, 44).  Elsewhere in the opinion, the ALJ further discussed Plaintiff's "ability to live with other family members, work at a fast food chain, and his general cooperative behavior and interaction on mental status examinations."  (Tr. 44).  The ALJ also explained precisely how she was incorporating additional limitations by including restrictions to "no tandem or shared tasks" with coworkers and no "customer service

9

capacity" when interacting with the public. (*Id*.)  Thus, the ALJ sufficiently articulated her reasons for rejecting the limitation to "superficial" interactions and finding instead that Plaintiff could engage in  "occasional" social interactions with additional restrictions.

Plaintiff points to no contrary evidence in the record that refutes the substantial evidence that he remains capable of the mental RFC as determined by the ALJ.  Nor does Plaintiff point to other substantial evidence that supports greater limitation to "superficial" interactions.[3] Based upon the ALJ's articulated analysis and a review of the record as a whole, the ALJ built a logical bridge to explain the basis for the RFC as determined. *Accord Cox v. Com'r of Soc. Sec.*, 2022 WL 4102741, at *2 (N.D. Ohio, Sept. 8, 2022) (rejecting plaintiff's similar claim that ALJ failed to sufficiently explain basis for finding "occasional" rather than "superficial" interactions, where  "[t]he  ALJ expressly indicated that he found the opinions of the state agency psychologists only somewhat persuasive, and specifically pointed to medical evidence in the record supporting this determination.").

### 2.  Plaintiff's Motion to Remand/Supplemental Authority

In a separate Motion to Remand filed after the completion of briefing on his Statement of Errors Plaintiff argues that a recent Order of the Appeals Council in an unrelated case provides additional authority in support of his position.  In the referenced case, the parties jointly agreed to a Stipulated Order of Remand after the plaintiff filed suit in the Northern District of Ohio.  *See Paul B. v. Commissioner*, Case No. 3:21-cv-02351-JRK.[4]  In accordance with the parties' stipulated agreement and the court's order of

---

[3]Even if such evidence existed, it would be irrelevant because substantial evidence also exists to support the ALJ's decision.
[4]Plaintiff Paul B. was represented by the same counsel who represents Plaintiff Jared W. in this case.

10

remand, the Appeals Council entered an order instructing the ALJ to better articulate why the ALJ had rejected the agency psychologists' limitation to "superficial interaction."  The Appeals Council's order states that the phrase "superficial interaction" is a term "that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others."  (Doc. 12, citing Doc. 12-1).  Plaintiff now asserts that the Appeals Council's Order constitutes a new and binding "Agency" definition of the phrase "superficial interaction."   (Doc. 12).

Plaintiff is wrong for two reasons.  First, even if the Appeals Council Order held any persuasive value (it does not), the alleged new definition would have no relevance here.  As discussed, the ALJ specifically rejected a limitation to superficial interaction and determined that Plaintiff was capable of occasional social interactions in the workplace. The ALJ's analysis in that regard is substantially supported.

Second, an Appeals Council Order is limited in scope to the case specified and does not constitute broad-sweeping Agency action that is binding on the Agency at large or on this Court.  The Social Security Agency could define "superficial interactions," if it chose to do so, in any number of ways.  The Social Security Act, as amended, along with Regulations, Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and Litigation Law Manual (HALLEX) provide the basic guides for adjudication and review of Social Security claims.  A single order by the Appeals Council that implements a stipulated judicial order of remand in an unrelated case does not.

### 3. The ALJ's Assessment of CNP Kosgay's Opinions

In the second claim articulated in his Statement of Errors, Plaintiff challenges the ALJ's rejection of the August 5, 2020 RFC opinions offered by Asha Kosgay, his treating nurse practitioner. The ALJ found her opinions to be "unpersuasive" for the following reasons:

> The undersigned notes the check-box form contains definitions of "mild, moderate and marked" inconsistent with those used by the agency. Furthermore, the form findings that the claimant is completely unable to function in the various areas indicated for up to 25% or 50% of the workday is not supported, and greatly overstates the claimant's limitations. For instance, there is no evidence the claimant would be unable to respond appropriately to coworkers, or the general public or maintain socially appropriate behavior for this portion of the work day. This is inconsistent with his own presentation at mental status exams, as well as his ability to perform some work activity during the relevant period. Additionally the undersigned notes that the time the opinion was offered, the claimant had only had a few visits with this provider, and had previously gone without treatment for a year. Furthermore, this appears to be based primarily on the claimant's recent hospitalization, which was acute in nature. Therefore, her opinions are not persuasive.

(Tr. 44; *see also* Tr. 513-515).

Plaintiff argues that the ALJ's analysis fails to comply with a new articulation requirement that requires an ALJ to explain how he or she evaluated the supportability and consistency of all medical source opinions and prior administrative findings. See 20 C.F.R. § 404.1520(c)(1)-(2). The undersigned concludes that the ALJ adequately discussed both factors in this case.

CNP Kosgay indicated on a check-box form that Plaintiff was "moderately" limited in areas of social interaction and in most areas of sustaining concentration and persistence and adaptation, and was "markedly" limited in his ability to perform at production levels expected by most employers and in his ability to tolerate customary work pressures. (Tr. 513-515). The ALJ began her analysis by pointing out that CNP

Kosgay's check-box opinions[5] were defined in a manner that is inconsistent with agency standards.  The ALJ was not required to elaborate further upon that obvious disconnect. On its face, the referenced form defines "moderate" limitation as "<u>unable to function</u>" in the respective area from 11-25% of the workday and "marked" limitation as "<u>unable to function</u> from 25-50% of the workday.  (Tr. 513, emphasis added).  Thus, CNP Kosgay's "moderate" limitations would be work-preclusive.  By contrast, "courts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'" *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)).

Ironically, the ALJ agreed that Plaintiff had "moderate" limitations in all "Paragraph B" functional areas, including in interacting with others, in maintaining concentration, persistence and pace, and in adapting or managing oneself.  (Tr. 39).  However, the ALJ did not agree with CNP Kosgay that such "moderate" limitations translated to work-preclusive mental RFC limitations. Instead, the ALJ reasonably determined that NP Kosgay's opinions that Plaintiff was "unable to function" for up to 25% of the workday in all but two functional areas, and was similarly "unable to function" for up to half the workday in the remaining two areas, "greatly overstated" Plaintiff's limitations.  (Tr. 44). The ALJ emphasized that the opinions that Plaintiff would be unable "to respond appropriately to coworkers, or the general public or maintain socially appropriate behavior for this portion of the work day" were unsupported by <u>any</u> evidence of record.  (*See* Tr. 44, finding "no evidence" in support).  Plaintiff complains that ALJ did not "point to any

---

[5]Many courts have acknowledged that "check-box" form opinions are "weak evidence at best." *Hernandez v. Com'r of Soc. Sec.*, 644 Fed. Appx. 468, 475 (6th Cir. 2016) (additional citations omitted).

specific evidence when making this claim." (Doc. 9 at 15, PageID 644). However, one cannot cite to a nullity.

In any event, it remains Plaintiff's burden to prove that he is disabled. While Plaintiff cites to a modest number of mental health records, none of the records to which Plaintiff cites support CNP Kosgay's opinions that he is unable to interact appropriately with coworkers or the general public. In contrast to that lack of evidentiary support, the ALJ cited to the mild symptoms consistently noted throughout the record in Plaintiff's mental status exam records and prior school records. (Tr. 44). The ALJ also convincingly cited to Plaintiff's demonstrated ability to work at various jobs during the alleged disability period without significant social interaction limitations. (Tr. 39, 44). Last, the ALJ alluded to the inconsistency of CNP Kosgay's opinions with Plaintiff's relatively conservative mental health treatment.

> Records document only one brief inpatient hospitalization for psychiatric care following a suicide attempt. However, the remainder of the record documents monthly outpatient medication management. Further, the claimant was notably without any mental health treatment for a year.

(Tr. 43). [6]

Having reviewed the records cited by the ALJ as well as the totality of the record, the undersigned finds no error. As the ALJ stated, CNP Kosgay's opinions are inconsistent with her own mental status exam notes. Plaintiff first presented to the emergency department in October 2018, close in time to his alleged onset of disability, with complaints of anxiety after breaking up with his girlfriend. (Tr. 41). At that time, Plaintiff was referred for outpatient behavioral health treatment, where he reported

---

[6]Consistent with his relatively conservative mental health treatment, Plaintiff testified that his last panic attack was 6 months prior, and that he usually is able to just walk away or sometimes eat for comfort when upset. (Tr. 43).

worsening symptoms "after going a couple years without treatment." (Tr. 41). He had an anxious mood and flat affect, but other behaviors were within normal limits. (*Id*.) At an initial psychiatric evaluation conducted by CNP Kosgay on November 30, 2018, he reported anxiety and depression, but denied current suicidal ideation and stated that he liked his job putting candles in boxes. (Tr. 42; Tr. 445). CNP Kosgay assessed his thought process as logical and linear, and his speech as clear, despite a flat and depressed mood and "[r]eactive" affect. (Tr. 445). On follow-up with CNP Kosgay, he was feeling "fine" on his medication. (Tr. 440). Although he did not feel any different, he also reported his mood was "good." (*Id.*; Tr. 42). In January 2019, he similarly reported to CNP Kosgay that others had told him his mood had improved. (*Id.*, citing Tr. 439; *see also* Tr. 438). CNP Kosgay's subsequent outpatient medication management records reflect generally cooperative behavior with a reduction of self-hitting behavior and irritability. (*Id.*, citing Tr. 485; *see also* Tr. 440). He reported he liked his job as a dishwasher. (Tr. 485). CNP Kosgay noted that his mood was "mildly depressed, with reactive affect," but that he had normal speech and logical thought process. (*Id.*)

Approximately seven months after his alleged onset of disability, Plaintiff dropped out of treatment with CNP Kosgay. (Tr. 485, 489, 600). A year later, on April 22, 2020, he sought to restart treatment after an incident of reported suicidal ideation for which the police were called following a disagreement with his girlfriend. (Tr. 42). Plaintiff reported that his girlfriend, with whom he had been living, was threatening to break up with him. (Tr. 482). His thought process and content were again within normal limits. (Tr. 483). On April 29, 2020, CNP Kosgay made similar mental status findings and re-prescribed the medication that Plaintiff had requested. (Tr. 481).

15

On May 9, 2020, Plaintiff presented to the emergency department after a suicide attempt in which he attempted to overdose on his Risperdal after his girlfriend broke up with him.  (Tr. 475).  He was voluntarily admitted for treatment from May 10-13, 2020 (Tr. 42, citing Tr. 599),[7] and reported worsening mood and depression the prior two months due to his relationship problems.  At the time of discharge, he was significantly improved. He had plans to stay with his aunt and to return to work at Burger King, where he appeared to function well.  (Tr. 42 citing Tr. 600).  During his first follow-up appointment with CNP Kosgay on May 19, 2020, he reported doing well with a more "hopeful and positive" mood. He reiterated his plan to continue working fulltime at Burger King "which he enjoys." (Tr. 475).  His mental status exam again reflected mostly normal findings, with a few "mild" abnormal findings in the category of cognition, and mild to moderate abnormal findings in thought content, but clear speech, logical thought process, and cooperative behavior.  (Tr. 477).

On June 25, 2020, Plaintiff returned for follow-up with CNP Kosgay.  (Tr. 471).  She again assessed only "mild" abnormal findings regarding thought content and mood, and noted "logical" thought process and "[c]ooperative" behavior.  (Tr. 473).  At that time Plaintiff reported that he had quit his job and was playing video games and music to keep busy.  (Tr. 471).  He stated that his mood was "more happy, positive" and that he was doing well with "good" energy level.  (*Id*.)

The next chronological record from CNP Kosgay is the checkbox RFC form dated August 2020.  In addition to noting discrepancies between the opinions expressed on that form and CNP Kosgay's mental status exams, the ALJ pointed out that CNP Kosgay had

---

[7]The ALJ's opinion contains a typographical error concerning the dates of admission.

seen Plaintiff on only a few occasions prior to her rendering those opinions, following a year long absence in which Plaintiff had dropped out of treatment. It was reasonable for the ALJ to discount her opinions as likely based upon Plaintiff's then-recent hospitalization. (Tr 44). In fact, the sole narrative explanation provided by CNP Kosgay references that single hospitalization. (Tr. 515, stating that "Pt has Hx of decompensation/hospitalization due to ↑ stress").

The undersigned has reviewed the record as a whole, including every citation identified by Plaintiff,[8] and finds nothing that undermines the substantial evidence cited by the ALJ for her rejection of CNP Kosgay's opinions as unsupported and inconsistent with the record. Many of the records cited by Plaintiff are dated either in October 2018 at the outset of his alleged disability (prior to significant treatment), or in April 2020, immediately following his return to treatment. While the cited records evidence some periodic exacerbation of symptoms, they do not support his assertion of disabling symptoms. In short, there is no evidence in the longitudinal record or in CNP Kosgay's own notes to support her opinions that Plaintiff's limitations preclude his ability to work.

### III. Conclusion and Recommendation

For the reasons discussed and because it is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and that this case be **CLOSED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[8]Plaintiff has cited to "PageID" numbers in the record. Pursuant to Local Rule 8.1.A(d), "parties must provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations" in all social security cases, Plaintiff's failure to include citations to the Administrative Transcript violates that rule and made review of this record unnecessarily more cumbersome. Counsel is hereby reminded of the obligation to comply with Local Rule 8.1.A in all cases filed in this Court.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JARED W.                                               Case No. 2:22-cv-01786

      Plaintiff,                               Watson, J.
                                                       Bowman, M.J.

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18